IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


LIBBY ROSE,

                    Plaintiff,

vs.                                    Case No. 11-4175-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits.  The matter has been fully briefed by the
parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's
decision to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On June 3, 2010, administrative law judge (ALJ) George M. Bock issued his decision (R. at 13-22). Plaintiff alleges that she has been disabled since September 15, 2008 (R. at 13). Plaintiff is insured for disability insurance benefits through December 31, 2012 (R. at 15). At step one, the ALJ found that

plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 15).  At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the cervical spine and depression (R. at 15).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 15). After determining plaintiff's RFC (R. at 17), the ALJ determined at step four that plaintiff is unable to perform any past relevant work (R. at 21).  At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 21-22)  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 22).

**III.  Did the ALJ err by failing to consider the opinions of Dr. Bergmann-Harms regarding plaintiff's mental RFC?**

An ALJ must evaluate every medical opinion in the record. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  This rule was recently described as a "well-known and overarching requirement."  Martinez v. Astrue, 2011 WL 1549517 at *4 (10th Cir. Apr. 26, 2011).  Even on issues reserved to the Commissioner, including plaintiff's RFC and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored.  Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3.  The ALJ "will" evaluate every medical opinion that they receive, and will

consider a number of factors in deciding the weight to give to
any medical opinion.  20 C.F.R. §§ 404.1527(c), 416.927(c).  It
is clear legal error to ignore a medical opinion.  <u>Victory v.
Barnhart</u>, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005).
Furthermore, according to SSR 96-8p:

> The RFC assessment must include a narrative
> discussion describing how the evidence
> supports each conclusion, citing specific
> medical facts…and nonmedical evidence…
>
> The adjudicator must also explain how any
> material inconsistencies or ambiguities in
> the evidence in the case record were
> considered and resolved…
>
> The RFC assessment must always consider and
> address medical source opinions. If the RFC
> assessment conflicts with an opinion from a
> medical source, the adjudicator must explain
> why the opinion was not adopted.

1996 WL 374184 at *7.

    According to the regulations, 20 C.F.R. § 404.1527(e)(2)(i)
states that ALJ's must consider findings and opinions of
nonexamining state agency medical and psychological consultants.
Furthermore, 20 C.F.R. § 404.1527(e)(2)(ii) states that unless
the treating source opinion is given controlling weight (which
did not occur in this case), the ALJ "must" explain in the
decision the weight given to the opinions of state agency
medical or psychological consultants.  SSR 96-6p reiterates that
ALJs may not ignore the opinions of state agency consultants,

and must explain the weight given to these opinions in their decisions.  1996 WL 374180 at *1, 2.

Although an ALJ is not required to discuss every piece of evidence, the ALJ must discuss significantly probative evidence that he rejects.  Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).  Furthermore, the general principle that the ALJ is not required to discuss every piece of evidence does not control when an ALJ has opinion evidence from a medical source. In such a situation, the ALJ must make clear what weight he gave to that medical source opinion.  Knight v. Astrue, 388 Fed. Appx. 768, 771 (10th Cir. July 21, 2010).

On March 25, 2009, Dr. Mintz, a licensed psychologist, performed a mental status examination on the plaintiff (R. at 392-393).  In his summary, he stated the following:

> She appears able to relate adequately to co-workers and supervisors.  She appears able to understand simple and intermediate instructions.  Her concentration capacity appears intact.

(R. at 393).  The ALJ noted these findings in his decision (R. at 18).

On April 7, 2009, Dr. Bergmann-Harms, a non-examining medical source, prepared a psychiatric review technique form. Dr. Bergmann-Harms opined that plaintiff had moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, or pace

(R. at 396, 406, Exhibit 8F).  The report also contained the following comments:

> Though i[t] is Dr. Mintz's opinion that she
> would related well with others, ADL
> [activities of daily living] and 3rd party
> report otherwise.  Moderate Social
> limitations.  Though Dr. Mintz reports
> concentration intact, ADL and 3rd party
> report time spent thinking about child who
> was killed in a car accident.  Moderate
> limitations in CPP [concentration,
> persistence, or pace].

(R. at 408).  On November 30, 2009, Dr. Cohen affirmed the above report by Dr. Bergmann-Harms as written (R. at 489).  The ALJ stated the following regarding this report:

> Further, the Administrative Law Judge has
> considered the opinion rendered by the State
> agency medical psychologist.  The record
> supports the opinion rendered by E.
> Bergmann-Harms, Ph.D. indicating that
> although the claimant has psychological
> impairments, these conditions do not rise to
> the level of disability under Social
> Security Administration regulations (Exhibit
> 8F).

(R. at 21).

On April 7, 2009, Dr. Bergmann-Harms also completed a mental RFC assessment on the plaintiff.  Dr. Bergmann-Harms found that plaintiff had moderate limitations in the following 3 categories:

> The ability to maintain attention and
> concentration for extended periods.
>
> The ability to interact appropriately with
> the general public.

> The ability to get along with coworkers or
> peers without distracting them or exhibiting
> behavioral extremes.

(R. at 410-411).  Dr. Bergmann-Harms also made the following

comments:

> A. Able to understand simple and
> intermediate instructions.
>
> B.  Though Dr. Mintz reports concentration
> intact, ADL and 3rd party report time spent
> thinking about child who was killed in car
> accident.  Depression would limit her to
> following simple instructions for an 8 hour
> work day.
>
> C.  Though it is Dr. Mintz's opinion that
> she would relate well with others, ADL and
> 3rd party report otherwise.  Infrequent
> contact with the public, [occasional]
> interaction with co-workers.

(R. at 412).  In his RFC findings for the plaintiff, the only

mental limitation included was a limitation to simple, unskilled

work (R. at 17).  The ALJ's explanation for this limitation was

as follows:

> In addition, due to her difficulty with
> concentration, the residual functional
> capacity has been further reduced to limit
> the claimant to simple, unskilled work.

(R. at 19).  However, the ALJ never discussed or mentioned the

mental RFC assessment by Dr. Bergmann-Harms, including the three

moderate mental limitations contained in the assessment.

Furthermore, none of the three moderate limitations were

specifically included in the ALJ's RFC findings.

9

In his brief, defendant states that "the RFC assessment is nearly identical to that opined by Dr. Bergmann-Harms (Tr. 17, 411)" (Doc. 13 at 17).  However, the record clearly shows that the ALJ did not specifically include any of the three moderate limitations set forth by Dr. Bergmann-Harms in his RFC findings. The argument of the government is clearly without merit.  As the case law, regulations, and social security rulings make clear, the ALJ clearly erred by failing to mention the limitations contained in the mental RFC assessment by Dr. Bergmann-Harms, and by failing to either include those limitations in the RFC findings, or providing a legally sufficient explanation for not including those limitations in the RFC findings.

In his decision, the ALJ did state that due to plaintiff's difficulty with concentration, the RFC was reduced to limit plaintiff to simple, unskilled work (R. at 19).[1]  However, even simple work can be ruled out by a vocational expert on the basis of a serious impairment in concentration and attention. Moderate impairments may also decrease a claimant's ability to perform simple work.  <u>Bowers v. Astrue</u>, 271 Fed. Appx. 731, 733 (10th Cir. March 26, 2008); <u>see</u> <u>Brosnahan v. Barnhart</u>, 336 F.3d 671, 675 (8th Cir. 2003); <u>Newton v. Chater</u>, 92 F.3d 688, 695 (8th Cir. 1996)(two medical opinions indicated that that claimant had

---

[1] Although Dr. Bergmann-Harms found that plaintiff had a moderate limitation in the ability to maintain attention and concentration for extended periods (R. at 410), Dr. Mintz had opined that plaintiff's concentration capacity appeared intact (R. at 393).  Therefore, it would appear that the ALJ gave greater weight to the opinion of Dr. Bergmann-Harms regarding plaintiff having difficulty with concentration.

moderate limitations in his ability to maintain attention and concentration for extended periods; the vocational expert testified that a moderate deficiency in concentration and persistence would cause problems on an ongoing daily basis regardless of what the job required from a physical or skill standpoint; the court rejected the Commissioner's contention that deficiencies in attention and concentration, along with other mental limitations, did not have to be included in the hypothetical question because the question limited the claimant's capabilities to simple jobs).

Furthermore, in Wiederholt v. Barnhart, 121 Fed. Appx. 833, 839 (10th Cir. Feb. 8, 2005), the ALJ posed a hypothetical question that limited plaintiff to simple, unskilled work, and omitted from the hypothetical the ALJ's earlier and more specific findings that she had various mild and moderate restrictions.  The court held that the relatively broad, unspecified nature of the description "simple" and "unskilled" did not adequately incorporate additional, more specific findings regarding a claimant's mental impairments (including moderate difficulty in maintaining concentration, persistence, or pace), and therefore the hypothetical question was flawed. Because of the flawed hypothetical, the court found that the VE's opinion that the claimant could perform other work was therefore not substantial evidence to support the ALJ's

11

decision. For these reasons, in the case before the court, it was not harmless error for the ALJ to simply limit plaintiff to simple, unskilled work because of her difficulty with attention and concentration. When this case is remanded, the ALJ should discuss the opinion of Dr. Bergmann-Harms that plaintiff has a moderate limitation in her ability to maintain attention and concentration for extended periods, and either include such a limitation in his RFC findings, or, in the alternative, provide a legally sufficient explanation for not including this limitation.

Furthermore, the ALJ provided no explanation for not including in his RFC findings a moderate limitation in plaintiff's ability to interact appropriately with the general public, and in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, as opined by Dr. Bergmann-Harms. The ALJ noted that Dr. Mintz had indicated that plaintiff appeared able to relate adequately to co-workers and supervisors. However, even though Dr. Bergmann-Harms provided an explanation for including moderate limitations in these two categories despite the opinion of Dr. Mintz (R. at 408, 412), the ALJ provided no explanation for giving greater weight to the opinions of Dr. Mintz regarding whether plaintiff had a moderate limitation in these two categories.

In this case, there is a clear conflict between Dr. Mintz and Dr. Bergmann-Harms regarding whether plaintiff has a moderate limitation in the ability to interact with the general public, or to get along with coworkers or peers.  For that reason, Dr. Bergmann-Harms explained why she was including a moderate limitation in these two categories even though Dr. Mintz had opined that plaintiff could relate well with others. However, the ALJ, contrary to SSR 96-8p, failed to explain how he resolved this conflict in the medical opinions, or why he did not include these limitations in his RFC findings.

In the case of Kency v. Barnhart, Case No. 03-1190-MLB (D. Kan. Nov. 16, 2004, Doc. 21), the ALJ had before him varying medical opinions regarding plaintiff's mental and physical limitations.  However, the ALJ made RFC findings without giving reasons in the decision for the weight given to each opinion (Doc. 21 at 6), and the ALJ failed to explain the reasons for discrediting certain opinions (Doc. 21 at 5).  The court concluded that the decision was unreviewable because the court was unable to discern how the ALJ derived his RFC findings (Doc. 21 at 8).  The court went on to state:

> Most important, the ALJ must explain how the decision was reached.  When the ALJ merely summarizes the facts, notes that he has considered all the facts, and then announces his decision, there is nothing for the court to review.  The court cannot know how the ALJ analyzed the evidence.  When the

> evidence is contradictory or ambiguous, as
> it is in most cases, the court cannot know
> which evidence was given what weight, or how
> the ambiguities were resolved.

(Doc. 21 at 9, emphasis added).  This is the very issue before
the court in this case.  There are contradictory medical
opinions regarding plaintiff's mental limitations.  However, in
violation of SSR 96-8p, the ALJ failed to give reasons for the
weight assigned to those medical opinions, and failed to explain
why certain medical opinions were not adopted.  In fact, the ALJ
did not even mention the limitations contained in the RFC
assessment by Dr. Bergmann-Harms.

The ALJ found that plaintiff had difficulty with
concentration (R. at 19).  That finding is consistent with the
opinion of Dr. Bergmann-Harms that plaintiff was moderately
limited in her ability to maintain attention and concentration
for extended periods (R. at 410).  However, this finding by the
ALJ is not supported by the opinion of Dr. Mintz, who found that
plaintiff's concentration capacity appeared intact (R. at 393).
On the other hand, the ALJ did not include a limitation in
plaintiff's ability to interact with the public or to get along
with co-workers or peers, as opined by Dr. Bergmann-Harms.
However, the failure to include these limitations is supported
by the opinion of Dr. Mintz that plaintiff appeared able to
relate adequately to co-workers and supervisors (R. at 393).

What the ALJ failed to do in his opinion was to set forth a
rational reason for appearing to adopt some of the opinions of
Dr. Bergmann-Harms, while appearing to reject others, and why he
appeared to adopt some of the opinions of Dr. Mintz, while
appearing to reject others.  This problem is compounded by the
ALJ's failure to even mention the limitations contained in the
assessment by Dr. Bergmann-Harms.  Therefore, this case shall be
remanded in order for the ALJ to consider all of the opinions,
including the mental limitations, contained in the mental RFC
assessment by Dr. Bergmann-Harms, and either include those
limitations in his RFC findings, or provide a legally sufficient
explanation for not including those limitations in his RFC
findings.[2]

**IV.  Other issues raised by the plaintiff**

    Plaintiff also asserts error by the ALJ regarding the ALJ's
consideration of plaintiff's credibility and daily activities.
When this case is remanded, new credibility findings will need

---

[2] Although defendant argues that the ALJ explained why he did not adopt all the limitations expressed by Dr.
Bergmann-Harms, the ALJ never provided such an explanation, and in fact, did not even mention any of those
limitations in his decision.  Defendant does cite to evidence, including the opinion of Dr. Mintz, which in the
opinion of defendant,  would support a decision not to include the limitations of Dr. Bergmann-Harms in the ALJ's
RFC findings (Doc. 13 at 17-18).  However, an ALJ's decision should be evaluated based solely on the reasons
stated in the decision.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  A decision cannot be affirmed
on the basis of appellate counsel's post hoc rationalizations for agency action.  Knipe v. Heckler, 755 F.2d 141, 149
n.16 (10th Cir. 1985).  A reviewing court may not create post hoc rationalizations to explain the Commissioner's
treatment of evidence when that treatment is not apparent from the Commissioner's decision.  Grogan v. Barnhart,
399 F.3d 1257, 1263 (10th Cir. 2005).  The problem in the case before the court is that the ALJ simply summarized
the facts, including the medical evidence, and then announced its decision regarding plaintiff's mental RFC.  The
ALJ did not even mention the contradictions in the evidence, including the medical opinion evidence, regarding
plaintiff's mental limitations, or explain how these contradictions in the medical evidence were considered and
resolved.

to be made after the ALJ reviews the opinions of Dr. Bergmann-Harms and determines what weight should be accorded to those opinions.  However, the court will briefly address some of the issues raised by the plaintiff in her brief.

In his decision, the ALJ stated that plaintiff has not received the type of medical treatment that one would expect for a disabled individual (R. at 20).  As this court has previously held, in the absence of any evidence or authority to support the ALJ's assertion that plaintiff did not receive the type of medical treatment one would expect for a totally disabled individual, the ALJ improperly rendered a medical judgment. Dannels v. Astrue, Case No. 10-1416-SAC (D. Kan. Dec. 20, 2011; Doc. 19 at 9-12); see Newman v. Astrue, Case No. 08-1391-JTM (D. Kan. Feb. 2, 1010; Doc. 18 at 11-12).  In the absence of any medical evidence to support this conclusion by the ALJ, the ALJ overstepped his bounds into the province of medicine. Miller v. Chater, 99 F.3d 972, 977 (10th Cir. 1996).  The ALJ is not entitled to sua sponte render a medical judgment without some type of support for his determination.  The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment. Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002).

Plaintiff also claimed that the ALJ improperly considered plaintiff's daily activities.  Specifically, the ALJ stated the following:

> Even though the claimant testified that she could not sit very long, her activities include watching television and coloring, which are sedentary activities.  In fact, it was noted during the claimant's psychological consultative examination that the claimant reported that her daily activities included watching television.

(R. at 19).  However, on remand, the ALJ must consider the fact that plaintiff testified that she watched TV while reclining in a chair, and often falls asleep (R. at 52), which is not compatible with sedentary work.  The fact that plaintiff watches television and colors does not establish that she can engage in a sitting position necessary for sedentary or other types of work.  Furthermore, watching television is not inconsistent with allegations of pain and related concentration problems.  Krauser v. Astrue, 638 F.3d 1324, 1333 (10th Cir. 2011).

According to the regulations, activities such as taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs are generally not considered to constitute substantial gainful activity.  20 C.F.R. § 404.1572(c) (2012 at 398).  Furthermore, although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of

testimony regarding pain or limitations, <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity.  <u>Krauser</u>, 638 F.3d at 1332-1333; <u>Thompson</u>, 987 F.2d at 1490.

In the case of <u>Draper v. Barnhart</u>, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping.  The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible.  The court found that substantial evidence did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work.**  As we said in <u>McCoy v. Schweiker</u>, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." In other words, evidence of performing general housework does not preclude a finding of disability.  In <u>Rainey v. Dep't of Health & Human Servs.</u>, 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for

groceries.  We noted that these were
activities that were not substantial
evidence of the ability to do full-time,
competitive work.  In <u>Baumgarten v. Chater</u>,
75 F.3d 366, 369 (8th Cir.1996), the ALJ
pointed to the claimant's daily activities,
which included making her bed, preparing
food, performing light housekeeping, grocery
shopping, and visiting friends.  We found
this to be an unpersuasive reason to deny
benefits: **"We have repeatedly held...that
'the ability to do activities such as light
housework and visiting with friends provides
little or no support for the finding that a
claimant can perform full-time competitive
work.'"** Id. (quoting <u>Hogg v. Shalala</u>, 45
F.3d 276, 278 (8th Cir.1995)).  Moreover, we
have reminded the Commissioner

> **that to find a claimant has the
> residual functional capacity to
> perform a certain type of work,
> the claimant must have the ability
> to perform the requisite acts day
> in and day out, in the sometimes
> competitive and stressful
> conditions in which real people
> work in the real world...The
> ability to do light housework with
> assistance, attend church, or
> visit with friends on the phone
> does not qualify as the ability to
> do substantial gainful activity.**

<u>Thomas v. Sullivan</u>, 876 F.2d 666, 669 (8th
Cir.1989) (citations omitted).

<u>Draper</u>, 425 F.3d at 1131 (emphasis added).  When this case is

remanded, plaintiff's daily activities must be considered in

light of all the evidence and the case law set forth above.

IT IS THEREFORE ORDERED that the judgment of the

Commissioner is reversed and remanded pursuant to sentence four

of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 21st day of November 2012, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge